IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY ALFRED VANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12cv326-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. PROCEDURAL HISTORY**

Plaintiff Gregory Alfred Vann ("Vann") applied for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that he is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next

---

Security matters were transferred to the Commissioner of Social Security.

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

      question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

      The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.  ISSUES

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

**A.  The Commissioner's Decision**

Vann was 53 years old at the time of the hearing and is a high school graduate.  (R. 34.)  He has prior work experience as a groundskeeper.  (R. 36, 54.)  Vann alleges that he became disabled on December 31, 2001, due to neck and back problems.  (R. 132.)  After the hearing, the ALJ found that Vann suffers from severe impairments of degenerative disc disease of the cervical and lumbar spine.  (R. 15.)  The ALJ found that Vann is unable to perform his past relevant work, but that he retains the residual functional capacity ("RFC") to perform less than the full range of light work.  (R. 16.)  Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Vann could perform, including work as a deliverer, automatic car wash attendant, and textile folder.  (R. 21.)  Accordingly, the ALJ concluded that Vann is not disabled.  (*Id.*)

**B.  The Plaintiff's Claims**

Vann presents the following issues for review:

(1)  The Commissioner's decision should be reversed because the ALJ relied on vocational expert testimony which conflicts with the Dictionary of Occupational Titles and these conflicts were not properly resolved in accordance with Social Security Ruling 00-4p.

(2)  The Commissioner's decision should be reversed because the ALJ failed to carry her burden of proving that there were a significant number of jobs available which Vann could have performed.

>  (3) The Commissioner's decision should be reversed because the ALJ failed to properly develop the record.

(Doc. No. 11, Pl. Br. at 1-2.)

## IV.  DISCUSSION

### A.  The DOT and the Number of Jobs

Vann asserts that the ALJ's finding that he is able to perform light work as a deliverer, automatic car wash attendant, and textile folder is not supported by substantial evidence because the testimony of the vocational expert ("VE") is not consistent with the Dictionary of Occupational Titles ("DOT").  Specifically, he argues that the jobs described by the VE have a higher reasoning level than he has the residual functioning capacity to perform, and therefore the vocational expert's testimony is either inconsistent or in conflict with the DOT. The court concludes that Vann is entitled to no relief on this basis.

The Social Security Administration is not bound by the DOT.  *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("[T]he SSA itself does not consider the DOT dispositive.").  "[W]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT . . . because the DOT "is not the sole source of admissible information concerning jobs.""  *Id*. at 1229-30.  The Eleventh Circuit has held that because the DOT is not comprehensive, reliance on the DOT is strictly within the discretion of the ALJ and "an ALJ may rely solely on the VE's testimony."  *Jones*, 190 F.3d at 1230-31.  *See also Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 793, 795-96 (11th Cir. 2011) (not required to weigh both VE testimony and DOT because "the VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific

requirements of a job").

"The Commissioner may rely on a VE to 'offer relevant evidence within his [] expertise or knowledge concerning the physical and mental demands' of particular jobs." *Leonard v. Commissioner of Soc. Sec.*, 409 Fed. Appx. 298, 301 (11th Cir. 2011). "In this Circuit, a VE's testimony trumps the DOT to the extent that the two are inconsistent. . . .The ALJ was permitted to base his findings on these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation." *Jones v. Commissioner of Soc. Sec.*, 423 Fed. Appx. 936, 939 (11th Cir. 2011).[4]

At the administrative hearing, in a hypothetical question posed to the vocational expert, the ALJ described the plaintiff's limitations as follows:

> . . . Lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently. Would need an alternating sitting and standing job . . . but would not need to leave the workstation. No overhead reaching and no climbing ladders, scaffolds, or ropes, no working around heights or dangerous equipment. And then only occasionally climbing stairs, ramps, bending, stooping, kneeling, crouching, crawling. And short simple instructions of job instructions. No complex or detailed job instructions.

(R. 55.)

---

[4] In *Jones v. Commissioner of Soc. Sec.*, the court noted:

> Jones cites SSR00-4p, which provides that "[n]either the DOT nor the [VE's testimony] automatically 'trumps'" and instructs the ALJ to "elicit a reasonable explanation" for a conflict between the two before relying on the VE's testimony. Social Security Rulings are not binding on this Court. To the extent that SSR 00-4p conflicts with *Jones* [*v. Apfel, supra*], we are bound by *Jones*."

423 Fed. Appx. at 939 fn. 4 (citations omitted).

The VE testified that there were light unskilled jobs in the national economy that the plaintiff could perform.  (*Id.*)  Specifically, the VE testified that Vann could perform light work such as a light deliverer, automatic car wash attendant, and textile folder.  (R. 55-56.)  The vocational expert also testified that his description of jobs that constitute light work is consistent with the Dictionary of Occupational Titles.  (R. 56-57.)

Although the ALJ limited the plaintiff to light exertional work, he also included other restrictions in the hypothetical question to the VE demonstrating that Vann is unable to perform a full range of light work.  (R. 55.)

> If a claimant's RFC precludes him from performing a full range of work at a particular exertional level (i.e., sedentary, light or medium work) or if the claimant is subject to nonexertional limitations, the ALJ ordinarily will consult a VE.  If the ALJ consults a VE, the VE's testimony will constitute substantial evidence if the ALJ "poses[s] a hypothetical question which comprises all of the claimant's impairments."

*Jones v. Commissioner of Soc. Sec.*, 423 Fed. Appx. 936, 938 (11th Cir. 2011).

The ALJ incorporated all of the plaintiff's impairments and detailed his residual functional capacity in his hypothetical questions to the VE.  Consequently, the ALJ is entitled to rely on the testimony of the vocational expert.  This court therefore concludes that the ALJ's finding that there are jobs as a deliverer, automatic car wash attendant, and textile folder that exist in significant numbers in the national economy that Vann could perform is supported by substantial evidence.

### B.  The Evidentiary Materials

Vann asserts that the ALJ failed to develop a full and fair record.  Specifically, Vann contends that the ALJ erred in discrediting his testimony based on the lack of routine medical treatment is erroneous because the ALJ "declined to leave the record open for further submissions" from his treating physician, Dr. J. Antonio Aldrete.  (Pl. Br. 10.)

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)).  "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of this claim."  *Id*. (citing 20 C.F.R. § 416.912(a) and 20 C.F.R. § 416.912(c)).

Nothing in the record indicates that the ALJ refused to allow the submission of additional medical records.  During the hearing, the following exchange occurred:

> ATTY: Your Honor, I'm sorry, I forgot to ask you, the conversation we had prior to the hearing about the past records from Dr. Aldredie [*sic*].  I'll be happy to try to get those in to you as soon as possible in order to give you a complete picture of the period of time between the alleged onset date and DLI up until the present time are the records that we, where we pick up in I believe in '06 or '08.  If you'd like me to do that I'll be more than happy to do, to do that, make every effort to do that as soon as possible.
>
> ALJ: I think we're okay, Mr. Jackson.
>
> ATTY: Okay.
>
> ALJ: If you get them in here that's great, if you don't, because

8

                I have records at least up through 2001.

      ATTY:        Okay, thank you, Your Honor.

(R. 61.) Thus, Vann was afforded an opportunity to submit additional medical records to the ALJ following the hearing. Vann, however, did not produce any additional records from Dr. Aldrete to the Commissioner. Thus, Vann is not entitled to relief based on his contention that the ALJ failed to adequately develop the medical record.

In addition, Vann fails to show that he was prejudiced by the absence of additional medical records. The record includes a letter from Dr. Aldrete which chronicles Vann's medical history in detail. (R. 271-77.) Vann's back and neck problems initially began after a car accident in 1992. (R. 271.) At some point after the accident, Vann underwent surgery to remove a bone spur from his spinal cord. (R. 272.) Vann first sought treatment from Dr. Aldrete for his complaints of neck pain and headaches in October 1999. (*Id.*) On November 9, 2009, an MRI indicated posterior bulging discs at C5-C6 with spur formation at the same level impinging the right foramina. (R. 273.) Dr. Aldrete proposed a conservative treatment plan, including a series of cervical epidural blocks and isometric exercises. (*Id.*) Dr. Aldrete noted that "Mr. Vann significantly improved with this treatment plan and was able to go back to work." (*Id.*)

On November 15, 1999, Vann was involved in another car accident. (R. 273.) Dr. Aldrete initially administered "cervical epidural blocks and [as] the intervals between treatments became greater [he] was able to change his treatments to less invasive paravertebral nerve blocks." (R. 273.) Dr. Aldrete noted that Vann's condition improved

until he was involved in another car accident on June 28, 2000. (*Id.*) X-rays of the cervical spine and chest were normal and a CT scan of the head, C-spine, T-spine, L-spine were negative. (R. 274.) On July 6, 2000, an MRI of the cervical spine indicated "multi-level degenerative disc disease of the cervical spine with associated moderate osteoarthritic changes, especially in the facet joints diffusely. Disc bulges or protrusions, small at C4-C-5 and C5-C6 with mild indention of the anterior central thecal sac but very little spinal cord displacement." (*Id.*) An MRI of the thoracic spine indicated "anterior wedging of the superior end plates of T4, T5, T6, and T7 with loss of an estimated 10 to 20% anterior vertical height. Small subligamentous herniation at T6-T7 with mild encroachment anterior thecal space. Multiple Schmorl's nodes. . . Moderate osteoarthritic changes of the thoracic spine. 10° scoliosis, upper thoracic spine." (*Id.*) On February 25, 2003, an MRI of the lumbar spine revealed a bulging disc with centrally broad-based protrusion at l5-S1. (*Id.*) Dr. Vann continued to treat Vann conservatively. (*Id.*) In May 2003, Vann injured his left foot while using a pressure washer to wash an apartment complex door. (R. 275.)
Thus, the ALJ's finding that conservative medical treatment was effective during the time period at issue and that Vann was able to perform work as a pressure washer after his alleged onset of disability is supported by substantial evidence.

      Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Given this standard of review, the court finds that the ALJ's decision was supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the ALJ did not err as a matter of law, the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate final judgment will be entered.

Done this 6th day of May, 2013.

                                             /s/Terry F. Moorer
                                       TERRY F. MOORER
                                       UNITED STATES MAGISTRATE JUDGE